**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

WILLIAM E. SMITH, III, DENNIS L.
ALCON, ERIC ALCON, MARK ALCON,
PAUL ALCON, TONY ALCON,
DARRELL FREDERICK, ANTHONY,
LOOMIS, CHESTER TILEY, JACOB
WEBB, and JEREMY WEBB,

        Plaintiffs,

        vs.                                  No. CIV 00-957 LH/DJS

AZTEC WELL SERVICING COMPANY,

        Defendant.

**OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Aztec Well's Objection to Plaintiffs'
Response to Memorandum Opinion and Order and Request for Ruling From Court ("Defendant's
Objections") (Docket No. 257), filed May 23, 2003.  Having considered the parties' briefs and
otherwise being fully advised, the Court finds that Defendant's objection is **well-taken.**

On April 2, 2003, the Court entered a Memorandum Opinion and Order barring claims
accruing after Aztec Well distributed a policy statement ("Travel Policy") to all of the 24-hour rig
hands.  (Memorandum Opinion and Order ("April 2003 MOO") (Docket No. 250)).  That date was
determined to be January 27, 2000.  The Court also ordered Plaintiffs to submit a revised list of the
members of the collective action remaining after its rulings on the claims affected by the Travel Policy
and the FLSA statute of limitations, 29 U.S.C. §255(a), as well as the parties' settlement as to the
"safety pay" issue.  *Id*. at *6.

When Plaintiffs filed their lists of the claims and member names they considered to be remaining in the case, Aztec Well objected. The Company interpreted the Court's ruling as barring *all* claims for compensation accruing after January 27, 2000. Therefore, it objected to the claims of any collective action members arising after that date. Aztec Well moved the Court to clarify the scope of its ruling. In reply, Plaintiffs argued that the Court's ruling only served to bar claims for travel time "per se," but did not bar claims for compensation for work done while traveling to and from the work site that would be compensable if done after clocking in. (Plaintiffs' Reply to Defendant's Objections to Plaintiffs' Response to Memorandum Opinion and Order and Request for Ruling From Court ("Plaintiffs' Reply") (Docket No. 258), filed June 9, 2003, at *2-4). In anticipation of the status conference set for Tuesday, August 26, 2003, the Court will clarify the scope of its prior ruling.

The Portal-to-Portal Act, 29 U.S.C. §254(a) lists activities for which employers are not liable under the Fair Labor Standards Act. Section 254(a) states:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in...
>
> > (1) walking, riding, traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> >
> > (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases such principal activity or activities.

29 U.S.C. §254(a) (internal citations omitted).

-2-

Plaintiffs interpret the Court's ruling as limited to the travel time claims because the Travel Policy established that traveling with the crew "per se" was not integral and indispensable to the Company. In other words, the travel time claims are barred by §254(a)(1). They maintain, however, that the claims arising from the work done *while* commuting, whether with the crew or not, are still viable for determination of compensability. In other words, Plaintiffs claim, the Court has not ruled that the tasks performed *en route* to and from the well sites, even after the Travel Policy went into effect, were "preliminary or postliminary" to the performance of the principal activity or activities that such employees were employed to perform, under §254(a)(2).

In the April 2003 MOO, the Court referenced pertinent portions of the Travel Policy, and concluded, in the absence of contradictory evidence from Plaintiffs, that its provisions sufficiently demonstrated that traveling to and from the well sites as a crew was not integral and indispensable to Aztec Well, at least after the Travel Policy was implemented. At that time, the Court intended to dismiss with prejudice all claims for compensation arising after January 27, 2000. Reading other provisions of the Travel Policy, the now Court affirms that the ruling acted as a complete bar to all claims arising after that date, whether for per se travel time or for activities performed *en route*.

Besides informing 24-hour crew members that they were not required to travel to or from the 24-hour rig location with the driller and could not be disciplined or terminated for refusing to ride with the driller, the Travel Policy also contained the following provisions:

> 5) 24 hour crew members including drillers, floor hands and derrick hands may not be asked or required to transport tools, uniforms, paper work, or anything else for the company to or from the 24 hour rig location...

> 6) 24 hour crew members including drillers, floor hands and derrick hands may not be asked or required to perform *any* service or duty for the company or any company supervisor while traveling to or from the 24 hour location...

(Defendant's Motion for Partial Summary Judgment, Ex. A) (emphasis added).  Like the provisions regarding commuting as a group, these provisions make it clear that, after January 27, 2000, employees were not to perform any tasks for the Company while traveling to and from the well site, and the Company had no interest in them doing so.

As already stated, Plaintiffs have offered no evidence to raise a genuine issue of fact regarding the effectiveness of the provisions of the Travel Policy after it went into effect.  Plaintiffs have not presented evidence, for example, that employees actually commuted to and from the well site with the crew, in spite of the Travel Policy, or did work while traveling, much less that any such work was not preliminary or postliminary.  Neither have Plaintiffs offered evidence that Aztec Well or its crew supervisors ignored their own policy.  In the absence of any evidence whatsoever, the Court granted summary judgment for *all* claims arising after the Travel Policy was implemented.

**IT IS, THEREFORE, ORDERED** that partial summary judgment is granted on behalf of Defendants for all claims arising after January 27, 2000, the date the Travel Policy was implemented.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**